VILLAGE OF OAKWOOD, APPELLANT, *v.* WULIGER, APPELLEE.

[Cite as Oakwood v. Wuliger (1982), 69 Ohio St. 2d 453.]

(No. 81-106—Decided February 26, 1982.)

*Mr. Joseph Diemert, Jr.,* law director, for appellant.

*Messrs. Wuliger, Fadel & Beyer* and *Ms. Deborah J. Nicastro,* for appellee.

CLIFFORD F. BROWN, J.   We limit our review to the issue of whether the Mayor's Court had the power to punish appellee for contempt in this case.[2]

## I.

Appellee argues that the Mayor's Court would not have been able to punish him for contempt under R. C. 1907.171, and, therefore, that the court could not hold him in contempt under village ordinance 525.14. See fn. 1, *supra.* We agree.

"It is a rule of law in Ohio that courts of limited jurisdiction, such as justices of the peace, have no inherent power to punish for contempt and have only such power to punish for contempt as is conferred by statute." *In re Shelton* (1957), 103 Ohio App. 436, 446. See 17 Ohio Jurisprudence 3d 331, Contempt, Section 13. A mayor's court, since it is created by statute, has limited jurisdiction, exercising only such powers as are directly conferred by legislative enactment. *Truman* v. *Walton* (1899), 59 Ohio St. 517, 525. See 38 Ohio Jurisprudence 2d 26, Municipal and County Courts, Section 16.

The power of a mayor's court to punish contempts is conferred by R. C. 1905.28:

"The mayor presiding at any trial may punish contempts, compel the attendance of jurors and witnesses, and establish rules for the examination and trial of all cases brought before him, in the same manner as judges of county courts."

R. C. 1907.171, which specifies the manner in which a county court judge may punish contempt, provides:

---

[2] Note that appellee did not file a cross-appeal as to his assignments of error on which the Court of Appeals did not rule. See *Davis* v. *Bd. of Review* (1980), 64 Ohio St. 2d 102, 103, fn. 1. Our decision as to appellant's proposition of law is, therefore, dispositive.

"A judge or a county court may punish as for a contempt, persons guilty of the following acts, and *no others:*

"(A) Disorderly, contemptuous, or insolent behavior toward such judge, tending to interrupt the due course of trial, or other judicial proceedings before such judge;

"(B) A breach of peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial, or other judicial proceeding;

"(C) Willful resistance in the presence of such judge to the execution of a lawful order, or process, made or issued by such judge." (Emphasis added.) These statutes confer *only* the power to punish *direct* contempts.

The failure of appellee Wuliger to appear for his traffic citation in this case, if it was anything, was an *indirect* contempt of court, as defined by *In Matter of Lands* (1946), 146 Ohio St. 589, at page 595, since it was "committed outside the presence of the court."

Given the absence of any statutory authority for a mayor's court to punish the appellee for an indirect contempt of court, the Oakwood Mayor's Court did not have jurisdiction to hear the indirect contempt charge against appellee for failure to appear. The Court of Appeals by unanimous decision correctly analyzed and applied the law of Ohio to this case. The power of a mayor's court to punish for contempt of court, as conferred by R. C. 1905.28 and 1907.171, is limited to acts committed in the presence of the court.

## II.

Not only is the Mayor's Court without the power to punish indirect contempts of court, it is also unnecessary that the mayor have the power to punish a defendant for contempt for failure to appear at a hearing. This is so because the mayor had the power to issue a warrant for the arrest of defendant to compel his appearance at a stated time by reason of the mayor's statutory powers enumerated in R. C. 1905.20, relating to criminal matters which, *inter alia,* provides:

" * * * The mayor shall award and issue all writs and process that are necessary to enforce the administration of justice throughout the municipal corporation. * * * "

Secondly, the Mayor's Court had a complete and adequate

remedy to enforce the traffic citation compelling the defendant to appear in court and answer the citation through Traf. R. 7, procedure upon failure to appear, which provides:

"(A) Issuance of summons, warrant.

"When a defendant fails to appear pursuant to a ticket issued to him, the court shall issue a supplemental summons or warrant.

"If a supplemental summons is not served or a warrant is not executed within 28 days of receipt by the serving officer, the court may place the case in a file of cases disposed of subject to being re-opened * * * ."

This power of the Mayor's Court to enforce appearance of defendant for a traffic citation by a warrant is also prescribed by R. C. 2935.26 as follows:

"(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, * * *
" * * *

"(C) In lieu of appearing at the time and place stated in the citation, the offender may, within seven days after the date of issuance of the citation, do either of the following: * * *
" * * *

"(F) If an offender fails to appear and does not comply with division (C) of this section, the court may issue a supplemental citation, or a summons or a warrant for the arrest of the offender pursuant to the Criminal Rules. * * * "

The term "minor misdemeanor" used in the foregoing statute is described as an offense which provides no imprisonment but permits a maximum fine of $100. See Committee Comment to R. C. 2929.21. The traffic citation for speeding charged defendant with a violation of Oakwood Ordinance 333.03 (speeding), the equivalent of the speeding statute, R. C. 4511.21.[3] A statutory speeding offense is defined in R. C. 4511.99(D) as a "minor misdemeanor on a first offense."

A combination of Traf. R. 7(A) and R. C. 2935.26(F) gave the Mayor's Court all the power it needed to issue a warrant

---

[3] On petition for rehearing, appellant correctly states that the Village of Oakwood offense is a second degree misdemeanor, so that appellee was not subject to an arrest warrant under R. C. 2935.26. This fact, however, does not alter our conclusion that mayors courts may punish only direct contempts.

for the arrest of defendant to bring him physically before the Mayor's Court for hearing and disposition of his speeding charge.

We conclude that the Oakwood Mayor's Court had neither the power nor the need to punish appellee for contempt due to his failure to appear before it at a hearing for a village traffic ordinance violation.

Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN and HOLMES, JJ., concur.

SWEENEY, LOCHER and KRUPANSKY, JJ., dissent.

LOCHER, J., dissenting. Appellee argues that the Mayor's Court would not have been able to punish him for contempt under R. C. 1907.171, and, therefore, that the court could not hold him in contempt under village ordinance 525.14. See fn. 1, *supra.* I disagree.

R. C. 1905.28 provides, in pertinent part, that: "[t]he mayor presiding at any trial may punish contempts * * * in the same manner as judges of county courts." R. C. 1907.171 articulates the scope of the contempt power under the statutory scheme and provides, in pertinent part: "A judge of a county court may punish as for a contempt, persons guilty of the following acts, and no others:

"(A) * * * *contemptuous* * * * *behavior* toward such judge, *tending to interrupt* the due course of trial, or other judicial proceeding * * * ." (Emphasis added.)

Appellee argues that R. C. 1907.171 permits the Mayor's Court to punish only "direct" contempts. R. C. 1907.171 does not, however, define punishable conduct in terms of the common-law distinction between direct and indirect contempts. Rather, this case poses the question of whether appellee's conduct was contemptuous and interrupted the proceedings.

Webster's Third New International Dictionary (1971) defines "proceedings" as "the course of procedure in a judicial action or in a suit in litigation: legal action * * * ." The Mayor's Court was attempting to perform the judicial function of establishing appellee's guilt or innocence with respect to the

alleged speeding violation. Clearly, the court's hearings were judicial proceedings. See R. C. 1.42.

This court defined contemptuous conduct in *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55, paragraph one of the syllabus, as follows:

"Contempt of court is defined as disobedience of an order of the court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." See, also, *State, ex rel. Turner,* v. *Albin* (1928), 118 Ohio St. 527, 532. The Mayor's Court summoned appellee to appear, and he refused to do so. Appellee's conduct prevented the Mayor's Court from proceeding in this cause. Indeed, his failure to appear prevented the Mayor's Court from conducting the hearing intended to give appellee an opportunity to respond to the charge against him.

Therefore, appellee's repeated failure to appear when summoned was a flagrant affront to the dignity of the court. The ruling of the Mayor's Court that appellee's conduct was contemptuous is, therefore, consistent with the definition of contempt in *Windham Bank, supra,* and permissible under R. C. 1907.171.

There is an additional basis for finding that the Mayor's Court had the power to punish appellee for contempt. "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson* (1873), 86 U. S. 505, 510 (opinion per Field, J.). We have recently reaffirmed this court's traditional adherence to this principle. "[T]he power of contempt is inherent in a court. *Hale* v. *State* (1896), 55 Ohio St. 210; *State, ex rel. Turner,* v. *Albin* (1928), 118 Ohio St. 527." *Harris* v. *Harris* (1979), 58 Ohio St. 2d 303, 307 (opinion per Holmes, J.).

In *Hale, supra,* this court articulated the source of this power. " * * * [T]he people possessing all governmental power, adopted constitutions completely distributing it to appropriate departments. They created courts, and, in some instances, *authorized the legislatures to create* others. The courts so *created* and *authorized* have all the powers which are

necessary to their efficient action, or embraced within their commonly received definition. The [contempt] power * * * was lodged permanently in the courts to be exercised by those who, for the time being, may be charged with the performance of judicial duties. * * * The suggestion that this power may be abused raises no doubt as to its existence." (Emphasis added.) *Hale, supra,* at 214, quoted in part with approval in *State, ex rel. Johnston,* v. *Taulbee* (1981), 66 Ohio St. 2d 417, 422.

The Mayor's Court was attempting to perform its judicial duty—adjudicating the alleged violation of a traffic ordinance. Appellee's argument that the General Assembly has exclusively prescribed the contempt power fails, therefore. "The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, *nor in any sense upon the legislative will."* (Emphasis added.) *Hale, supra,* at 213, quoted with approval in *Taulbee, supra,* at 421-422, and *State* v. *Local Union 5760, United Steelworkers of America* (1961), 172 Ohio St. 75, 80, disaffirmed on other grounds in *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 252.

Clearly, the Mayor's Court had jurisdiction to hear the traffic charge against appellee. R. C. 1905.01. In order to exercise this jurisdiction, the Mayor's Court invoked its contempt power. "If the court has the inherent power to summarily punish contempts, it must by the same token have the power to determine the kind and character of conduct which will constitute contempt." *State, ex rel. Turner,* v. *Albin, supra,* at 535. Therefore, any right which the Mayor's Court might have had to issue a warrant was merely supplementary, not exclusive. The majority requires mayor's courts to employ warrant and arrest in order to bring defendants to justice. This will necessitate extraordinary expenditures which I cannot countenance and which, as a practical matter, jurisdictions maintaining mayor's courts can not afford. This encourages

460

the public to ignore mayor's courts and brings our entire system of justice into disrepute.

Accordingly, I would hold that a mayor's court may punish for contempt of court a defendant who has repeatedly failed to appear before the court in response to a summons which alleges that the defendant violated a traffic ordinance within the court's jurisdiction.

SWEENEY and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.