THE STATE, EX REL. JOHNSON, *v.* COUNTY COURT OF PERRY COUNTY.

[Cite as State, ex rel. Johnson, *v.* Perry County Court (1986),
25 Ohio St. 3d 53.]

(No. 85-1044—Decided July 16, 1986.)

*Kincaid, Cultice & Geyer, Catherine A. Cunningham* and *Peter N. Cultice,* for relator.

*Leech, Freeman, Scherbel, Hostetler & Peddicord* and *Fleet Freeman,* for respondent.

*Per Curiam.*

### I

The initial question we consider is whether county courts have jurisdiction through inherent power or under R.C. 2705.02 to punish contempts. For reasons to follow, we hold that they do not have such jurisdiction.

### A

County courts were created by an Act of the General Assembly. R.C. 1907.011. They are therefore unlike this court, the courts of appeals and the courts of common pleas, all of which originate in the Ohio Constitution. Section 1, Article IV, Ohio Constitution.

"A court created by the constitution has inherent power to define and punish contempts, such power being necessary to the exercise of judicial functions." *State, ex rel. Turner,* v. *Albin* (1928), 118 Ohio St. 527, paragraph one of the syllabus. "The general assembly is without authority to abridge the power of a court created by the constitution to punish contempts * * *, such power being inherent and necessary to the exercise of judicial functions * * *." *Hale* v. *State* (1896), 55 Ohio St. 210, paragraph one of the syllabus. Statutory powers to deal with contempts are merely cumulative and in addition to the inherent authority of the court. *Univis Lens Co.* v. *United Electrical Radio & Machine Workers of America* (1949), 86 Ohio App. 241, 245 [41 O.O. 158]. However, where a procedure has been prescribed for the exercise of the power to punish contempts by rule or by statute, it is the duty of the court to follow such procedure. See *In Matter of Lands* (1946), 146 Ohio St. 589, 595 [33 O.O. 80]. A court created by statute, however, has only limited jurisdiction, and may exercise only such powers as are directly conferred by legislative action. *Oakwood* v. *Wuliger* (1982), 69 Ohio St. 2d 453, 454 [23 O.O.3d 398]. County courts, therefore, as presently constituted in Ohio, have no inherent authority to punish contempts.

### B

"Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions. * * * The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55 [56 O.O.2d 31], paragraphs one and two of the syllabus.

Generally, contempt of court actions are not susceptible to neat categorization. "Proceedings in contempt are *sui generis* in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these. Contempt proceedings are means through which the courts enforce their lawful orders." *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197, 201-202 [64 O.O.2d 129]. Nevertheless, there has been some effort to classify and define contempt actions. Our previous cases indicate that some are civil and some are criminal. "Although there has never been a clear line of demarcation between criminal and civil contempts, it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts. * * * [Citation omitted.] Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. * * * [Citations omitted.] On the other hand, the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court." *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, 82-83 [15 O.O.2d 133]. More recently, this court made similar observations. With respect to civil contempt, we said, "[p]unishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, * * * [citation omitted], since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 253-254 [18 O.O.3d 446].

Under the facts of this case, Johnson became the subject of a contempt action to punish him for not personally attending a hearing in the county court. This contempt action clearly is not for the benefit of an opposing party. It is punitive in character and, as such, is a criminal action. "The standard of proof required in a criminal contempt proceeding is proof of guilt beyond a reasonable doubt." *Brown* v. *Executive 200, Inc., supra,* at syllabus. "Because contempt proceedings affect personal liberty, the proceedings and the statutes governing them must be strictly construed." *In re Contempt of Court* (1972), 30 Ohio St. 2d 182, 187 [59 O.O.2d 188]; *State* v. *Local Union 5760, supra,* at 83.

Which statutes control the underlying action herein? The relator, Johnson, essentially argues that a county court is limited exclusively in its contempt power to that conferred by R.C. 1907.171:

"A judge of a county court may punish as for a contempt, persons guilty of the following acts, *and no others*:

"(A) Disorderly, contemptuous, or insolent behavior toward such

judge, tending to interrupt the due course of trial, or other judicial proceedings before such judge;

"(B)  A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial, or other judicial proceeding;

"(C)  Willful resistance in the presence of such judge to the execution of a lawful order, or process, made or issued by such judge." (Emphasis added.)

Respondent conversely asserts that R.C. 2705.02 gives it authority to proceed against Johnson. That section reads:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A)  Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

"(B)  Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

"(C)  A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

"(D)  The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

"(E)  A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance."

Specifically, respondent claims that R.C. 2705.02 confers power on county courts to punish contempts by reason of R.C. 1907.371:

"Chapters 2301. to 2335., inclusive, and 2703., 2705., 2713., and 2737. of the Revised Code, in their nature applicable to proceedings in a county court, and in respect of which no special provision is made in Chapters 1907. to 1923., inclusive, of the Revised Code, apply to such proceedings."

Respondent misapprehends the meaning of this statute. In effect, R.C. 1907.371 states that the provisions of R.C. Chapter 2705, *inter alia,* apply to county courts *except* where a "special provision is made in Chapters 1907. and 1923." of the Revised Code. Since contempt powers are conferred upon county court judges by R.C. 1907.171, they have no authority to discharge contempts under R.C. 2705.02. Moreover, R.C. 1907.171 is a special provision relating particularly to the jurisdiction of county courts, whereas R.C. 2705.02 is a common provision relating to Ohio courts generally. "Where there is no manifest legislative intent that a general provision of the Revised Code prevail over a special provision, the special provision takes precedence." *State* v. *Frost* (1979), 57 Ohio St. 2d 121 [11 O.O.3d 294], paragraph one of the syllabus; *Cincinnati* v. *Thomas Soft Ice Cream* (1977), 52 Ohio St. 2d 76 [6 O.O.3d 277], paragraph one of the syllabus; *State, ex rel. Myers,* v. *Chiaramonte* (1976), 46 Ohio St. 2d 230 [75 O.O.2d 283], paragraph one of the syllabus. Stated another way, "[a]

special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable." *Andrianos* v. *Community Traction Co.* (1951), 155 Ohio St. 47 [44 O.O. 72], paragraph one of the syllabus.

We consequently conclude that R.C. 1907.171 is the exclusive authority by which county courts may punish contempts and county courts have no power to proceed against a contemnor under R.C. 2705.02.

## C

Although the summons and complaint in the underlying action accuse Johnson of contempt under R.C. 2705.02, respondent avers that Johnson's conduct comes within the sphere of R.C. 1907.171(A), and that prohibition should not issue for that reason. This argument is meritless.

In addition to the categorization of contempts as civil or criminal, they may be divided into two further classes—direct and indirect. "A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment therefore may be imposed summarily without the filing of charges or the issuance of process. * * * An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice." *In Matter of Lands, supra,* at 595.

R.C. 1907.171, permitting county court judges to punish contempts, has been construed to fall within the former class. In *Oakwood* v. *Wuliger, supra,* a defendant in a traffic case failed to appear for a hearing in mayor's court. R.C. 1905.28 prescribes that mayors may punish contempts "in the same manner as judges of county courts." This court held: "The power * * * to punish for contempt of court, as conferred by R.C. * * * 1907.171, is limited to acts committed in the presence of the court." *Id.* at syllabus. Applying this principle to the facts in *Wuliger,* the court at 455 said: "The failure of appellee Wuliger to appear for his traffic citation in this case, if it was anything, was an *indirect* contempt of court, as defined by *In Matter of Lands* (1946), 146 Ohio St. 589, at page 595 [33 O.O. 80], since it was 'committed outside the presence of the court.' " (Emphasis *sic.*) Likewise, in the present case, Johnson's failure to appear in court was an indirect contempt. We hold that pursuant to *Wuliger,* indirect contempts are beyond the competence of a county court to punish.

We further observe that respondent's argument that Johnson's conduct comes within the scope of R.C. 1907.171(A) raises serious constitutional questions. The complaint and summons do not mention that statute. The principles of due process of law forbid that an accused can be charged under one statute but be tried and convicted under another. This is true particularly in a criminal contempt proceeding where the law is to be strictly construed. *In re Contempt of Court, supra,* at 187; *State* v. *Local Union 5760, supra,* at 83. "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court pro-

ceedings so that reasonable opportunity to prepare will be afforded, and it *must 'set forth the alleged misconduct with particularity.'* \* \* \* Due process of law \* \* \* does not allow a hearing to be held \* \* \* without giving \* \* \* [defendants] timely notice, in advance of the hearing, of the *specific issues that they must meet.*" (Emphasis added and footnotes omitted.) *In re Gault* (1967), 387 U.S. 1, 33-34 [40 O.O.2d 378]. Certainly a contempt action that charges under one statute but attempts to convict under another violates the foregoing constitutional principles.

## II

We now consider whether a writ of prohibition should be allowed. "It is well-settled that there are three essentials for issuance of a writ of prohibition: the court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; the exercise of that power must be unauthorized by law; and it must appear that the denial of the writ would cause injury for which there is no other adequate remedy in the ordinary course of the law." *State, ex rel. McGraw,* v. *Gorman* (1985), 17 Ohio St. 3d 147, 150; *Bobb* v. *Marchant* (1984), 14 Ohio St. 3d 1, 3.

The first of the foregoing criteria is met. For reasons we have explained, the second condition also is satisfied because the county court is without authority to punish indirect contempts under R.C. 2705.02. While it could possibly be argued that relator has an adequate remedy via appeal from the county court's holding that it has jurisdiction, this court has often held—as we do now—that "[i]f an inferior court is without jurisdiction whatsoever to act, the availability or adequacy of a remedy of appeal to prevent the resulting injustice is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court." *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326, 329 [59 O.O.2d 387]; *State, ex rel. Sowell,* v. *Lovinger* (1983), 6 Ohio St. 3d 21, 23; *State, ex rel. Smith,* v. *Court* (1982), 70 Ohio St. 2d 213, 215 [24 O.O.3d 320]; *State, ex rel. Gilla,* v. *Fellerhoff* (1975), 44 Ohio St. 2d 86, 87-88 [73 O.O.2d 328]; *State, ex rel. Allied Chemical Corp.,* v. *Earhart* (1974), 37 Ohio St. 2d 153, 156 [66 O.O.2d 313]; *State, ex rel. Ohio High School Athletic Assn.,* v. *Judges* (1962), 173 Ohio St. 239, 249 [19 O.O.2d 52] ("Even where there is an adequate remedy by way of appeal, this court may, in its discretion, issue a writ of prohibition."); *State, ex rel. Tempero,* v. *Colopy* (1962), 173 Ohio St. 122, 123 [18 O.O.2d 366]; *State, ex rel. Gelman,* v. *Common Pleas Court* (1961), 172 Ohio St. 70, 72 [15 O.O.2d 131].

For all of the reasons discussed in this opinion, the writ of prohibition is allowed.

*Writ allowed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting.   Prior opinions of this court determining when a writ of prohibition should issue have stated that "[o]nly where there is a 'total and complete want of jurisdiction' on the part of the inferior court, will such a writ be allowed despite the presence of a remedy by way of appeal. *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326, 329 [59 O.O.2d 387]. Conversely, if there is no 'patent and unambiguous restriction' * * * on the jurisdiction of the court which clearly places the dispute outside its jurisdiction, prohibition will not lie * * *." *State, ex rel. Smith,* v. *Court* (1982), 70 Ohio St. 2d 213, 215-216 [24 O.O.3d 320]. In the present case, the actions of the trial court are not clearly and unambiguously outside that court's jurisdiction, as a further analysis of the majority opinion demonstrates.

The majority makes much of the distinction between criminal contempt and civil contempt, but utilizes this analysis merely for the purpose of applying a maxim of strict construction to the statutes at issue which are not criminal statutes. The civil-criminal distinction between kinds of contempt is not applicable to, nor is it alleged to be applicable to, the relevant distinctions between the contempt statutes at issue, or the distinctions between direct contempt and indirect contempt. In any event, since the statutes are plain on their face, the criminal-civil comparative analysis is unnecessary.

Of greater importance are the distinctions between direct contempt and indirect contempt. For no matter which statute is ultimately applied, the conduct complained of is undisputed, *i.e.,* the relator-contemnor defied both written and direct lawful commands made by the court. The court personally called relator, spoke to him, and was refused by him. Under R.C. 1907.171(C), such contempt is defined as "[w]illful resistance *in the presence of such judge* to the execution of a lawful order * * * made or issued by such judge." (Emphasis added.) It is quite apparent that direct vocal communication which places the senses of the court in connection with those of relator is sufficiently "in the presence" of the court to have demonstrated such direct contempt. Furthermore, it is within the sound discretion of a court to determine when the contempt alleged is either direct or indirect. Accordingly, the court has no need for any fact-finding process, but may conduct a mere summary proceeding based on the personal knowledge which the court has and giving said contemnor an opportunity to "show cause why * * * [he] should not be punished for contempt * * * [of] court * * *." See, *e.g., In Matter of Lands* (1946), 146 Ohio St. 589, 595 [33 O.O. 80]; *State* v. *Local Union 5760* (1961), 172 Ohio St. 75 [15 O.O.2d 133]; *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201, 203 [15 O.O.3d 221].

It is this summary proceeding which relator seeks to avoid through the assertion that because the court used the wrong statute, it is deprived of

jurisdiction. The underlying objection to the trial court's contempt proceedings, then, is that the court named the wrong statute in its order to show cause and, as a defective indictment, did not give "timely notice, in advance of the hearing, of the specific issues that * * * [he was required to] meet." *In re Gault* (1967), 387 U.S. 1, 34 [40 O.O.2d 378].

In a consideration of this latter point, it seems that relator was fully apprised of the specific issues he was to have met since they are the same under either contempt statute. Further, it appears that both statutes apply to the same conduct and differ merely in respect to jurisdictional authorizations. Putting aside for the moment any arguments as to which statute empowers what kind of court, we arrive at a more salient point, that an order to show cause is not the same as an indictment and accordingly cannot be judged by the same standards. An order from the court commands a particular act, in this case to explain particular conduct. The fact that the court has power and jurisdiction to order the act commanded is primary. The court need not explain the basis for such authority in an otherwise lawful order. On the other hand, an indictment, to be effective at all, must include, *inter alia,* the basis of the charge, the name of the one accused, and a statement of the specific public offense violated. See R.C. 2941.03 and 2941.05, as well as Crim. R. 7.

Even if the show cause order should be judged by the standards of an indictment, Crim. R. 7(D) provides that a "court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars in respect to any defect, imperfection, or omission in form or substance * * *, provided no change is made in the name or identity of the crime charged." In the case before us, the crime charged is set forth in clear, unambiguous terms.

Finally, upon this issuance of the order from this court, the trial court need only amend its order to specify the appropriate jurisdictional statute. No jeopardy has attached since relator has yet to stand before the trial court. It cannot fail to be noticed that a court of appeals, after relator's appearance, could easily order reversal on the same grounds and the trial court could as easily amend its order pursuant to such appellate review. Therefore, an appeal is a most present, useful remedy in this instance, while an order in prohibition from this court is an inappropriate act in aid of one who apparently would impugn the integrity of a local trial court.

Accordingly, I would deny the writ.