[Cite as *Schaffer v. Sheets*, 2025-Ohio-1007.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| ALEX SCHAFFER | Case Nos. 2024-00808PQ, 2024-00828PQ, 2024-00839PQ, 2024-00840PQ, 2024-00841PQ, 2024-00844PQ, 2024-00845PQ, 2024-00846PQ, 2024-00847PQ, 2024-00848PQ, 2024-00849PQ, 2024-00850PQ, 2024-00851PQ, 2024-00852PQ, 2024-00853PQ, 2024-00854PQ, 2024-00855PQ, 2024-00856PQ, 2024-00857PQ, 2024-00858PQ, 2024-00881PQ, 2024-00883PQ, 2024-00889PQ |
| Requester | |
| v. | |
| SCOTT O. SHEETS | |
| Respondent | |
| AND | |
| ALEX SCHAFFER | Special Master Todd Marti |
| Requester | RECOMMENDATION FOR DISMISSAL |
| v. | |
| THE OHIO STATE UNIVERSITY | |
| Respondent | |

{¶1} These cases present a difficult question: how to address wasteful litigation resulting from the running conflict between an abusive public records requester and a public office that has regularly failed to meet its obligations under the Public Records Act. I recommend that the court respond by dismissing these cases without prejudice so that they can be pursued in a court that has the authority to resolve that conflict.

## I. Background.

{¶2} Requester Alex Schaffer has sworn that he is "the President and Founder of Empire Sports & Entertainment, Inc[.]" Based on that, this court has found that "Alex Schaffer operates a business that . . . uses information about Respondent Ohio State University's ("OSU") Athletic Department. He makes frequent public records requests to OSU for that information." *PQ Miscellaneous Requester Alex Schaffer's Notice of*

*Document Submission*, filed April 11, 2024, in Case No. 2024-00226PQ, at p. 4, ¶ 4;[1] *Schaffer v. Ohio State Univ.*, 2024-Ohio-2185, ¶ 6, adopted 2024-Ohio-2625 (Ct. of Cl.) (*Schaffer I*).

{¶3} As discussed more fully below, Schaffer and his company made more than 1,000 public records requests of OSU during 2024. *PQ Miscellaneous*, filed February 14, 2025, in Case No. 2024-00839PQ ("*OSU Aff.*"), pp. 18-243, 269-1808.[2] During that time he brought more than 40 cases against OSU or its counsel. Those cases are listed in Table 1 at the end of this recommendation. As also discussed below, Schaffer's requests and cases are not only numerous, they are often demeaning.

{¶4} Schaffer's cases are not totally without merit. Although many of his claims failed, he has proven that OSU regularly fails to produce records within a reasonable time in violation of R.C. 149.43(B)(1). *Schaffer I*, 2024-Ohio-2185, ¶¶ 29-37, 70-71; *Schaffer v. Ohio State Univ.*, 2024-Ohio-5299, ¶¶ 13-17, adopted Oct. 16, 2024 (Ct. of Cl.) (*Schaffer II*). Further, OSU's evidence in the consolidated cases suggests that pattern continues.

{¶5} Schaffer continues to inundate OSU with public records requests. As of February 6, 2025, he had submitted more than 70 multi-part public records requests in 2025. *OSU Aff.* pp. 8-17, 1809-1916. Absent some change, the mutually reinforcing cycle of Schaffer's abusive requests, OSU's sluggish responses, and more cases in this court will likely continue.

{¶6} In an effort to address that problem, I invoked R.C. 2743.75(E)(3)(c) to require the parties to submit evidence and memoranda on whether case law from Ohio and other jurisdictions provides any guidance. *Order*, entered February 4, 2025. The parties have made those submissions. I have carefully considered them and the affidavit attached to Schaffer's March 5, 2025, *Combined Motion for Leave to File a Supplemental Affidavit,*

---

[1] The reference is to the page of the PDF copy posted on the court's docket.

[2] Functionally identical copies of the *OSU Aff.* were filed in all these consolidated cases except 2024-00808PQ. All references to that submission are to the copy filed in Case No. 2024-00839PQ. All references to specific pages of the *OSU Aff.* are based on the internal pagination of that filing.

*Motion to Strike, and Motion for Sanctions* in making the recommendations discussed below.

## II. Analysis.

### A. The Court should dismiss these cases pursuant to R.C. 2743.75(D)(2).

{¶7} R.C. 2743.75 is intended to provide "an expeditious and economical procedure . . . to resolve disputes alleging a denial of access to public records[.]" It achieves that result in two ways. One is by providing a streamlined process that leads to limited relief for successful claimants. R.C. 2743.75(D), (E), (F), and (G)(1). Another is R.C. 2743.75(D)(2), which gives the court discretion to dismiss cases that would thwart R.C. 2743.75's purpose of quickly and efficiently resolving public records disputes. See generally, *Meros v. Office of Ohio AG Dave Yost*, 2023-Ohio-1861, ¶¶ 6-8, 11-12 (Ct. of Cl.).

{¶8} The discretion granted by R.C. 2743.75(D)(2) is broad. It allows dismissal "[*n]otwithstanding any provision to the contrary* in this section." (Emphasis added). That allows dismissal of a case that otherwise falls within the scope of R.C. 2743.75 because "a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions[.]" *Ohio Neighborhood Fin., Inc. v. Scott*, 2014-Ohio-2440, ¶ 35. Further, and of relevance here, the General Assembly placed no substantive or procedural limitations on the court's authority to dismiss a case pursuant to this subsection, entrusting such dismissals to the court's sound discretion.

{¶9} I recommend that the court exercise that discretion to dismiss these cases in order to (1) keep from becoming a party to Schaffer's abuse of the public records laws, and to (2) allow the conflict underlying these cases to be addressed by a court with full authority to do so.

1. **The court should dismiss these cases to keep from becoming a party to abuse of the public records laws**.

{¶10} Ohio is not the only jurisdiction that provides a system for resolving public records disputes that starts with a recommendation from a public records specialist and ends with a judicial decision. Connecticut law and the federal Freedom of Information Act ("FOIA") provide for specialized review followed by a controlling judicial decision. Conn.

Gen Stat. Ann. 1-206(b) and (d); 4-183; 1 Hitchcock, *Guidebook to the Freedom of Information and Privacy Acts,* §§ 4:13, 16:1 (2023 Ed.).

{¶11} As discussed below, courts in those jurisdictions dismiss cases brought by requesters who have abused public records laws. While not controlling here, there are several reasons why those precedents are very persuasive. Most obviously, they deal with the same challenge presented here: how to deal with abuse of public records laws. Moreover, they consider some of the factors Ohio courts consider in responding to abuse in non-public record cases. Further, the structural similarities between those systems and R.C. 2743.75 makes them relevant; all three systems involve an initial decision by public records specialist, subject to review by a judge. Finally, Ohio courts have put considerable weight on decisions from those jurisdictions in other public records contexts, and there are no obvious reasons why this court should not follow that pattern. See e.g. *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 368 (2000); *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854, ¶¶ 20, 21, 22.

{¶12} Federal and Connecticut precedents have identified factors for determining whether a record claimant's behavior is so abusive as to warrant dismissal of his public records case. Several of those factors are present and strongly support dismissing these cases.

### a. The number of requests/cases.

{¶13} The federal courts have considered the number of record requests a plaintiff has made. *Rosiere v. United States*, 2016 U.S. Dist. LEXIS 189938, * 7 (D. Col. June 13, 2016) (*Rosiere I*); *Rosiere v. United States*, 2016 U.S. Dist. LEXIS 190110, * 8 (D. Col. July 21, 2016) (*Rosiere II*); *Rosiere v. United States*, 2017 U.S. Dist. LEXIS 169177, *11 (D. N.J Oct. 12, 2017) (*Rosiere III*). They and the Connecticut courts also consider the number of enforcement actions the requester has filed. *Robert v. DOJ*, 2005 U.S. Dist. LEXIS 33793, ** 35-36 (E.D.N.Y. Dec. 9, 2005); *Rosiere I*, 2016 U.S. Dist. LEXIS 189938, ** 6-7; Rosiere *II*, 2016 U.S. Dist. LEXIS 190110, * 8*; Rosiere III*, 2017 U.S. Dist. LEXIS 169177, ** 2, 10; *Smith v. Freedom of Information Comm.*, 2016 Conn. Super. LEXIS 1999, * 3 (July 19, 2016); *Lowthert v. Freedom of Information Comm.*, 2021 Conn. Super. LEXIS 1453, ** 2-3 (Sep. 1, 2021). That latter group of cases is consistent with Ohio precedent outside the public records context. *Kondrat v. Byron*, 63 Ohio App.3d 495, 496

(11th Dist.1989); *State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs.*, 100 Ohio App.3d 592, 593-594 (8th Dist.1995); *Weltchek v. Weltchek*, 1981 Ohio App. LEXIS 11877, *4 (6th Dist. July 31, 1981); *Karmasu v. S. Ohio Corr. Facility*, 63 Ohio Misc.2d 377, 378 (Ct. of Cl.1993).

{¶14} *Requests.* OSU reports that Schaffer and his company made more than 1,000 records requests to OSU during 2024 and more than 70 requests so far in 2025. *OSU Aff.* at pp. 8-243. Those numbers, as large as they are, significantly understate the volume of Schaffer's requests. Most are multi-part requests, seeking multiple categories of records or data points, many seeking as many as 16 separate types of records/data points. See e.g. *Id.* at pp. 707-708, 734-735, 742-743.[3] Consequently, the actual number of his requests is exponentially higher than the numbers OSU reported.  Those numbers dwarf those prompting dismissal of FOIA cases.  *Rosiere II*, 2016 U.S. Dist. LEXIS 190110, * 8 (a combined total of 78 requests)*.*

{¶15} That is not changed by Schaffer's assertion that he did not make the requests sent from the legal@empiresports.com and osuprr@empiresports.com email accounts.  He supports that assertion by averring he does not have access to any Empire account other than alex.schaffer@empiresports.com, and that he does not use the legal@empiresports.com and osuprr@empiresports.com accounts to make record requests. *Affidavit of Alex Schaffer*, filed February 24, 2025 in Case No. 2024-00839PQ, at pp. 2, 3, 4, ¶¶ 13-16, 27, 29.[4]  Those averments are demonstrably false.

{¶16} Schaffer's claim that he has no access to any Empire account other than alex.schaffer@empiresports.com is contradicted by evidence that he previously filed in this court. He submitted affidavit testimony from Empire's system administrator that "Schaffer, through his position of President of Empire, has both personal and work access

---

[3] It is worth noting that the specific requests listed in the text represent only a handful of such requests. Schaffer made functionally identical requests almost every day from June 21, 2024 through November 26, 2024. *OSU Aff.* at pp. 734, 1694.

[4] Functionally identical copies of that affidavit were filed in all these consolidated cases. The reference to that submission is to the copy filed in Case No. 2024-00839PQ. The reference to specific pages of the that affidavit is based on the internal pagination of that filing.

to the network system of Empire." *PQ Miscellaneous*, filed August 13, 2024, in Case No. 2024-00342PQ, 354 page PDF file, p. 319, ¶ 8.[5]

{¶17} Schaffer's claim that he has not used the legal@empiresports.com or osuprr@empiresports.com accounts to make records requests is also contradicted by his filings in this court and the language of the requests. He previously filed a case—in his own name—to enforce records requests made from osuprr@empiresports.com. *Amended Complaint*, filed July 29, 2024, in Case No. 2024-00461PQ, at pp. 85, 86, 89, 90, 93, 94, 97, 98; PQ *Miscellaneous*, filed October 4, 2024, at pp. 5, ¶¶ 23, 24; 99, 100, 103, 104, 126, 127, 130, 131,141, 142, 144, 145, 160, 161, 164, 165, 208, 209, 212, 213.[6] In fact, he explicitly swore that one of the requests at issue in that case was sent from osuprr@empiresports.com and faulted OSU for sending correspondence about that request to alex.schaffer@empiresports.com. *Id.* at p. 5, ¶¶ 23, 24. Further, many of the requests from the legal@empiresports.com and osuprr@empiresports.com accounts refer to disabilities that are personal to Schaffer and that could not, by definition, be suffered by an artificial entity like Empire. That shows that those accounts were used on Schaffer's behalf. Compare *OSU Aff.* at pp. 1156-1158 with e.g. 508-514 and e.g. 1525-1534.

{¶18} Those contradictions fatally undermine Schaffer's specific assertion on this point and diminish his overall credibility.

{¶19} *Cases.* Schaffer filed more than 40 public records cases against OSU or its counsel in 2024. *See* Table 1. That is more than the number of cases other courts have considered to evince abuse. *Robert*, 2005 U.S. Dist. LEXIS 33793, ** 35-36 (24 cases) (E.D.N.Y. Dec. 9, 2005); *Rosiere I*, 2016 U.S. Dist. LEXIS 189938, * 7 (8 cases); *Rosiere II*, 2016 U.S. Dist. LEXIS 190110, * 8 (8 cases); *Smith*, 2016 Conn. Super. LEXIS 1999, * 3 (32 over two years); *Lowtherth*, 2021 Conn. Super. LEXIS 1453, ** 2-3 (44 cases over

---

[5] The reference is to the page of the PDF copy posted on the court's docket.

[6] The references to specific pages of those filings are to the pages of the PDF Copies posted on the court's docket.

several years). See also *Karmasu v. S. Ohio Corr. Facility,* 63 Ohio Misc.2d 377, 378 (Ct. of Cl.1993) (39 cases over four years).

### b. Rapidity of requests/cases.

{¶20} The courts have held that making multiple records requests and filing multiple enforcement actions in rapid succession evidence abuse. *Rosiere I*, 2016 U.S. Dist. LEXIS 189938 **4-5; *Godbout v. Freedom of Information Comm.*, 2016 Conn. Super. LEXIS 2161 * 18 (Aug. 9, 2016) (*Godbout II*). Schaffer has done both.

{¶21} *Requests.* OSU produced undisputed evidence that Schaffer submitted an average of 10 requests a day every day in June of 2024 and an average of eight requests a day every day in July of 2024. *OSU Aff.* at pp. 42-115. That approaches the frequency another court has found to evince abuse when they were made on a *single day. Godbout II,* 2016 Conn. Super. LEXIS 2161 * 18 (11 requests in a single day). Schaffer's unremitting torrent of requests dwarfs that when one considers that his daily deluges continued for *two months.*

{¶22} *Cases.* Schaffer has also engaged in concentrated bursts of filing cases. As seen in Table 1, he has filed as many as four, five, seven, and eighteen cases on single days. That too dwarfs frequency found to be abusive. *Rosiere I*, 2016 U.S. Dist. LEXIS 189938 * 5.

### c. Duplicative requests/cases.

{¶23} Federal precedent holds that duplicative records requests are indicative of abuse. *Rosiere I*, 2016 U.S. Dist. LEXIS 189938, ** 3-4 (15 "nearly identical requests"). The federal and Connecticut cases also recognize that duplicative enforcement actions are evidence of abuse. *Id.* at ** 4-5; *Goldgar v. Office of Administration*, 26 F.3d 32, 35 (5th Cir.1994); *Smith*, 2016 Conn. Super. LEXIS 1999, ** 12-13; *Godbout I*, 2016 Conn. Super. LEXIS 2161, *5 ("The commission surely is not powerless to stem this torrent of litigation, particularly over the same issue").

{¶24} *Duplicative requests.* OSU provided evidence that Schaffer submitted more than 200 requests for records that had already been provided. *OSU Aff.* at pp. 1 ¶ 3(b), 60-62, 64-73, 75-84, 86-95, 97-101. Schaffer has not disputed that. OSU has also shown that Schaffer has made scores of other requests that are identical in all respects except for the dates inquired of:

- Requests for multiple records regarding Athletic Director Bjork's daily activities. See e.g. *Id*. at pp. 734-735, 742-743. Those requests were made almost every day from June 21, 2024, through November 26, 2024. *Id*. at pp. 734, 1694.

- Requests for records documenting when Director Bjork entered/exited OSU buildings and parking facilities and information about flights Director Bjork took. See e.g. *Id*. at pp. 1698, 1701, 1707. Those requests were made almost every day from November 27, 2024, through February 5, 2025. *Id*. at pp. 1698, 1914.

- Requests for multiple records regarding Associate Athletic Director Scarbough's daily activities. See e.g. *Id*. at pp. 730, 732. Those requests were made almost every day from June 19, 2024, through November 26, 2024. *Id*. at pp. 730, 1696.

- Requests for records documenting when Associate Director Scarbough entered/exited OSU buildings and parking facilities. See e.g. *Id*. at pp. 1700, 1703, 1706. Those requests were made almost every day from November 26, 2024, through February 4, 2025. *Id*. at pp. 1700, 1913.

This court has noted that pattern in other of Schaffer's cases. *Schaffer I*, 2024-Ohio-2185, ¶ 15; *Schaffer II*, 2024-Ohio-5299, ¶¶ 2, 5.

{¶25} *Duplicative cases*. A "suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Rosiere I*, 2016 U.S. Dist. LEXIS 189938, * 4 (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). That describes some of Schaffer's cases. *Schaffer II* was so duplicative that it was barred by res judicata. *Schaffer II,* 2024-Ohio-5299, ¶¶ 7-12. The 18 cases previously consolidated as the Group Four Consolidated Cases all involved the same claims, parties, and relief. *Order*, entered January 2, 2025, in Case Nos. 2024-00853PQ through 2024-00858PQ.

### d. Personal attacks.

{¶26} The cases also hold that abuse is evidenced by the requester making personal attacks on the responding officials or others involved in the public records process.  *Smith*, 2016 Conn. Super. LEXIS 1999, *12; *Godbout I,* 2016 Conn. Super. LEXIS 2161, ** 5-6, 19-20; *Godbout v. Freedom of Information Comm.*, 2019 Conn. Super. LEXIS 2555, **18-19 (Sep. 23, 2019); *Rosiere II*, 2016 U.S. Dist. LEXIS 190110, ** 9-10.

{¶27} Schaffer has repeatedly engaged in such attacks. He has made unsubstantiated allegations that OSU has made "falsified" submissions to this court. He

has repeatedly referred to OSU employees as "disgraced," "incapable of performing [their] duties," not earning their salaries, "incompetent," and suggested that they personally pay any awards made by this court. And emblematic of his attitude, he derisively commanded them to "go fetch my records servants." *PQ Miscellaneous*, 257 p. PDF document, filed October 4, 2024 in Case No 2024-00461PQ, p. 6 ¶ 30; *Complaint*, filed July 2, 2024, in Case No. 2024-00548PQ, p. 2; *Amended Complaint*, filed July 23, 2024 in Case No. 2024-00548PQ, p. 2; *Complaint*, filed July 23, 2024, in Case No. 2024-00550PQ, p. 2; *Amended Complaint*, filed July 23, 2024 in Case No. 2024-00550PQ, p. 2; *Complaint*, filed November 21, 2024, in Case No. 2024-00815PQ, p. 4; *Complaint*, filed November 27, 2024, in Case No. 2024-00828PQ, pp. 3, 9, 13. This too supports the conclusion that Schaffer is abusing the public records laws.

***

{¶28} Other than his self-refuted claim that he did not make some of the requests considered here, Schaffer has not disputed any of the facts discussed above. Although Schaffer's February 24 affidavit, his February 28 memorandum, and the affidavit attached to his March 5 motion dispute other facts OSU asserted, he has not challenged any of the facts analyzed above, other than his use of the legal@empiresports.com and osuprr@empiresports.com email accounts. Together, those facts establish a level of abuse that far exceeds levels that prompted other courts       to dismiss public records cases. I therefore recommend that this court do the same.

{¶29} That recommendation is not at odds with the well settled—and well-founded—principle that no "pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time." *State ex rel. Beacon Journal Pub. Co. v. Andrews*, 48 Ohio St.2d 283, 289 (1976); *State ex rel. Fox v. Cuyahoga County Hospital System,* 39 Ohio St.3d 108, 111 (1988); *State ex rel. Warren Newspapers v. Hutson*, 70 Ohio St.3d 619, 623 (1994). That principle was announced and restated in cases involving offices' responses to one-off requests; they did not involve anything approaching the rolling barrage of requests documented here. Those cases are therefore distinguishable.

{¶30} Nor is this recommendation at odds with the Supreme Court's instruction that "courts must be very careful before imposing sanctions in a public-records case." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 2010-Ohio-5073, ¶ 11. Legally, I am not recommending sanctions under a generally applicable sanctions provision, but am recommending dismissal based on a statute tailored to public records cases. Procedurally, I have been careful in making this recommendation, giving the parties notice of the potential applicability of the principles underlying it, providing them with the opportunity to present evidence and arguments about those principles, and thoroughly analyzing their submissions. Substantively, the scale of Schaffer's abuse far exceeds that found sufficient to support sanctions in *Bardwell.*

## 2. Dismissal is also warranted because the court lacks authority to grant the relief the parties seek.

{¶31} This court has held that a R.C. 2743.75(D)(2) dismissal is appropriate if limitations on its authority prevent it from resolving the parties' claims. *Meros v. Office of Ohio AG Dave Yost,* 2023-Ohio-1861, ¶¶ 12, 13 (Ct. of Cl.); *Grant v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1619, ¶ 6 (Ct. of Cl.). That is consistent with the principle that a mandamus action will be dismissed for refiling elsewhere if the mandamus court lacks authority to issue all the relief sought. *State ex rel. Walker v. City of Bowling Green*, 69 Ohio St.3d 391, 392 (1994); *State ex rel. Satow v. Gausse-Milliken*, 2003-Ohio-2074, ¶¶ 15-17. That principle is relevant here because R.C. 2743.75 cases are controlled by mandamus standards. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 32; *Viola v. Ohio AG's Office*, 2021-Ohio-3828, ¶ 16 (10th Dist.).

{¶32} The parties' submissions in the individual consolidated cases and responses to the February 4 order show that they each seek relief in addition to the resolution of the specific disputes underlying the individual consolidated cases. Schaffer seeks to end what he views as OSU's systemic failure to provide public records on a timely basis. Although he has pled delay claims in relation to specific records requests, the recurring nature of those claims and his arguments make it clear that he seeks relief addressing that general pattern. OSU, on the other hand, seeks protection from Schaffer's abusive behavior through the types of measures imposed in *State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs.*, 100 Ohio App.3d 592 (8th Dist.1995); *Kondrat v. Byron*, 63 Ohio App.3d 495

(11th Dist.1989); *Weltchek, v. Weltchek*, 1981 Ohio App. LEXIS 11877 (6th Dist. July 31, 1981).

{¶33} This court lacks authority to grant either type of relief. Nothing in R.C. 2743.75 authorizes it to grant relief beyond ordering the production of specific records in response to specific requests; the statute does not authorize the broader relief Schaffer seeks. Further, this court cannot grant damages that might incent OSU to more promptly fulfill record requests. *Doe v. Ohio State Univ.*, 2024-Ohio-5891, ¶¶ 42-55 (10th Dist.). Nor does the court have authority to grant OSU the relief it seeks, orders of the kind issued in *Richard*, *Kondrat*, and *Weltchek*. Those orders were based on those constitutional courts' inherent authority and this statutory court lacks inherent authority. *State ex rel. DeWine v. Court of Claims of Ohio*, 2011-Ohio-5283, ¶¶ 19-21; *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 54 (1986).

{¶34} Both Schaffer and OSU have colorable claims for relief this court cannot grant. I therefore recommend that the court dismiss these cases without prejudice so the parties can present their claims to a court with authority to grant that relief. *See* R.C. 149.43(C)(1)(b).

## B. **Pending motions**.

{¶35} Schaffer's March 5, *Combined Motion for Leave to File to File a Supplemental Affidavit, Motion to Strike, and Motion for Sanctions*, should be granted in part and denied in part:

- The motion should be GRANTED as to Schaffer's request for leave to file a supplemental affidavit. OSU raised additional factual issues after Schaffer filed his February 24, 2025, affidavit and Schaffer should be given the opportunity to respond. I have considered that supplemental affidavit in preparing this recommendation.

- The motion should be DENIED AS MOOT to the extent that it seeks to strike OSU's additional evidence and arguments about Schaffer's filings in other courts, the manhours OSU has spent responding to his requests, and the impact of his requests on OSU's processing of third parties' requests. None of those matters were considered in preparing this recommendation.

- The motion should be DENIED on the merits to the extent that it seeks sanctions against OSU. Schaffer identifies no legal bases for the sanctions he seeks.

{¶36} All other motions in these consolidated cases will be moot if this recommendation of dismissal is accepted. I therefore recommend that all those motions be DENIED as moot.

**C. Costs**.

{¶37} The costs of the consolidated cases should be assessed against Schaffer pursuant to R.C. 2743.09(F), and R.C. 2303.20 because he implicitly agreed to pay those costs by filing these cases. *Helfrich v. Hall*, 2022-Ohio-1852, ¶ 25 (5th Dist.).

**III. Conclusion.**

{¶38} In light of the foregoing, I recommend that the court:

A. DISMISS these consolidated cases without prejudice pursuant to R.C. 2743.75(D)(2).

B. GRANT requester's March 5, *Combined Motion for Leave to File to File a Supplemental Affidavit, Motion to Strike, and Motion for Sanctions* as to his request to file a supplemental affidavit and DENY that motion in all other respects.

C. DENY all other pending motions in these consolidated cases as moot; and

D. Order requester to bear the costs of these consolidated cases.

TODD R. MARTI
Special Master

**Filed March 11, 2025**
**Sent to S.C. Reporter 3/24/25**

**Table 1**

**Cases filed by Alex Schaffer in 2024**

| Case Number | Date filed |
|---|---|
| 2024-00226PQ | 3/5/2024 |
| 2024-00248PQ | 3/12/2024 |
| 2024-00292PQ | 3/22/2024 |
| 2024-00293PQ | 3/22/2024 |
| 2024-00342PQ | 4/11/2024 |
| 2024-00387PQ | 4/26/2024 |
| 2024-00408PQ | 5/2/2024 |
| 2024-00424PQ | 5/10/2024 |
| 2024-00444PQ | 5/17/2024 |
| 2024-00460PQ | 5/24/2024 |
| 2024-00461PQ | 5/24/2024 |
| 2024-00462PQ | 5/24/2024 |
| 2024-00480PQ | 5/31/2025 |
| 2024-00548PQ | 7/2/2024 |
| 2024-00549PQ | 7/2/2024 |
| 2024-00550PQ | 7/2/2024 |
| 2024-00808PQ | 11/19/2024 |
| 2024-00814PQ | 11/20/2024 |
| 2024-00815PQ | 11/21/2024 |
| 2024-00828PQ | 11/27/2024 |
| 2024-00839PQ | 12/2/2024 |
| 2024-00840PQ | 12/2/2024 |
| 2024-00841PQ | 12/2/2024 |
| 2024-00844PQ | 12/2/2024 |
| 2024-00845PQ | 12/2/2024 |
| 2024-00846PQ | 12/2/2024 |
| 2024-00847PQ | 12/2/2024 |
| 2024-00848PQ | 12/2/2024 |
| 2024-00849PQ | 12/2/2024 |
| 2024-00850PQ | 12/2/2024 |
| 2024-00851PQ | 12/2/2024 |

| | |
|---|---|
| 2024-00852PQ | 12/2/2024 |
| 2024-00853PQ | 12/2/2024 |
| 2024-00854PQ | 12/2/2024 |
| 2024-00855PQ | 12/2/2024 |
| 2024-00856PQ | 12/2/2024 |
| 2024-00857PQ | 12/2/2024 |
| 2024-00858PQ | 12/2/2024 |
| 2024-00876PQ | 12/12/2024 |
| 2024-00881PQ | 12/13/2024 |
| 2024-00883PQ | 12/13/2024 |
| 2024-00889PQ | 12/18/2024 |