DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Eastern Local Classroom Teachers' Association (ELCTA) and Eastern Local Schools Support Personnel Association (ELSSPA), appeal a judgment of the Pike County Court of Common Pleas finding them in contempt of court. Appellants argue the trial court erred in finding that Jimmy Lykins, a member of ELSSPA, violated the permanent injunction. Appellants also argue the court erred by holding them liable for Lykins' contemptuous conduct. We conclude the trial court did not err in finding Lykins violated the permanent injunction as there is competent, credible evidence in the record to support the court's finding. However, there is no evidence that appellants approved of or actually participated in the contemptuous conduct. Additionally, there is no evidence that appellants failed to make reasonable efforts to secure compliance with the court's injunction. Thus, the court abused its discretion when it found appellants in contempt of court.
 {¶ 2} Appellants commenced an authorized strike against appellee, Eastern Local School District Board of Education, on September 26, 2002. That same day, appellee obtained an ex parte temporary restraining order limiting appellants' picketing activity. One week later, the trial court held a hearing to determine whether it should issue a permanent injunction. Following the hearing, the court dissolved the temporary restraining order and issued a permanent injunction that prohibited appellants and their members from, among other things, threatening or intimidating appellee's agents, employees, representatives, prospective employees, parents, students, or other persons having business with appellee.
 {¶ 3} The main entrance to Eastern Local Schools is located on Tile Mill Road in Beaver, Ohio. The entrance to the school forms a "T" with the road and one must turn either right or left when leaving the school. Under the injunction, no more than two picketers were permitted at the school's main entrance. On October 31, 2002, Jimmy Lykins, a member of ELSSPA, and Ray McFarland, the president of ELCTA, were picketing at the school's main entrance. A dozen other picketers had congregated behind a guardrail across the street from the school's entrance. At 3:15 p.m., a procession of three vehicles driven by non-striking employees left the school. William Legg led the procession. As Mr. Legg slowly began to turn left onto Tile Mill Road, Lykins approached the vehicle and allegedly smashed his picket sign into the vehicle's front windshield causing a one-half inch scratch.
 {¶ 4} One week later, appellee filed a motion seeking an order to show cause regarding contempt. The motion related the incident involving Mr. Legg's vehicle and also alleged that Lykins had paintballed the homes of three other non-striking employees the same day. Following a hearing on the motion, the trial court concluded appellee had not met its burden of proof regarding the paintballing incidents. However, the court found that Lykins' conduct towards Mr. Legg violated the permanent injunction. Thus, the court found appellants in contempt, stating: "Therefore, it is the Order of this Court that [Appellants], by the action of their member, Jimmy Lykins, an active union member, are in Contempt of this Court's Injunction Order." The court awarded appellee reasonable attorney's fees and ordered appellants to reimburse Mr. Legg for the damage to his windshield. Appellants now appeal and raise the following assignment of error: "The trial court erred as a matter of law in holding that the Appellants Eastern Local Classroom Teachers' Association and The Eastern Local Schools Support Personnel Association, by the action of their member, Jimmy Lykins are in contempt of the Common Pleas Court's Order, and therefore are responsible for the payment of the Appellee Board's attorney fees and costs."
 {¶ 5} In their sole assignment of error, appellants advance four separate arguments. Appellants' first two arguments challenge the trial court's contempt finding.
 {¶ 6} Contempt is a disregard of, or disobedience to, an order or command of judicial authority. First Bank of Mariettav. Mascrete, Inc. (1998), 125 Ohio App.3d 257, 263,708 N.E.2d 262. We will not reverse a finding of contempt by a trial court unless the court abused its discretion. State ex rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. State v. Lessin,67 Ohio St.3d 487, 494, 1993-Ohio-52, 620 N.E.2d 72; Rock v.Cabral (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. When applying the abuse of discretion standard of review, we are not free to substitute our judgment for that of the trial court. Inre Jane Doe I (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301.
 {¶ 7} Courts may classify contempt as either direct or indirect. See State v. Kilbane (1982), 61 Ohio St.2d 201, 204,400 N.E.2d 386. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01; Burt v. Dodge (1992),65 Ohio St.3d 34, 599 N.E.2d 693, fn.1. Acts in direct contempt of court may be punished summarily. R.C. 2705.01; Burt, supra. Indirect contempt, on the other hand, involves acts committed outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. First Bank ofMarietta, 125 Ohio App.3d 257, fn.2. Acts of indirect contempt may not be punished summarily. Rather, the accused is entitled to procedural safeguards such as written notice, an adversary hearing, and the opportunity for legal representation. R.C.2705.03; State ex rel. Seventh Urban, Inc. v. McFaul (1983),5 Ohio St.3d 120, 122, 449 N.E.2d 445; State v. Belcastro (2000),139 Ohio App.3d 498, 201, 744 N.E.2d 271.
 {¶ 8} Courts may further classify contempt as either civil or criminal. See State ex rel. Corn v. Russo, 90 Ohio St.3d 551,554, 2001-Ohio-15, 740 N.E.2d 265. The distinction depends largely upon the character and purpose of the sanction imposed.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253,416 N.E.2d 610. Civil contempt sanctions are remedial or coercive in nature and are for the benefit of the complainant. Id.
Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. State exrel. Johnson v. Perry Cty. Court (1986), 25 Ohio St.3d 53,495 N.E.2d 16, quoting State v. Local Union 5760 (1961),172 Ohio St. 75, 173 N.E.2d 331. Criminal contempt sanctions are usually characterized by an unconditional prison term or fine. SeeBrown, 64 Ohio St.2d at 254.
 {¶ 9} The classification of contempt as either civil or criminal is critical because it determines the applicable burden of proof. In a civil contempt action, the burden of proof is clear and convincing evidence. Brown, 64 Ohio St.2d at 253. However, the burden of proof for criminal contempt is beyond a reasonable doubt. Brown, 64 Ohio St.2d 250, syllabus.
 {¶ 10} The trial court did not specify in its entry whether it found appellants in civil or criminal contempt. Nor do the parties address the type of contempt involved, although appellants refer to the clear and convincing burden associated with civil contempt. In its entry, the trial court indicated it was ordering appellants to pay attorney's fees and repair costs "as punishment for Defendant's Contempt". This reference to punishment would seem to suggest the court found appellants in criminal contempt. However, a closer look at the court's sanction leads to the conclusion the court found appellants in civil contempt. The purpose of the court's sanction is remedial in that it is intended to compensate appellee for losses sustained as a result of appellants' noncompliance with the permanent injunction. See Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, 58, 271 N.E.2d 815, quoting McComb v. JacksonvillePaper Co. (1949), 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599. Thus, we conclude the trial court found appellants in indirect civil contempt.
 {¶ 11} In their first argument, appellants contend the court erred in finding Lykins violated the permanent injunction by threatening and intimidating Mr. Legg. They argue the evidence supports Lykins' assertion that he did not strike Mr. Legg's vehicle. Appellee, however, argues that witness credibility was crucial to the court's finding. Appellee argues the court relied on testimony from Mr. Legg and Ms. Whittaker as well as videotape footage of the incident to make its finding.
 {¶ 12} William Legg was the first witness to testify. Mr. Legg is a science teacher for the Eastern Local School District. Mr. Legg testified that he continued to work after appellants went on strike. According to Mr. Legg, he left the school around 3:15 p.m. on October 31, 2002, followed by Terri Whittaker and Tracy Linscott. When he reached the end of the school's driveway, he stopped in the center of the driveway. He testified that Ray McFarland was standing to his right and Jimmy Lykins was on his left, standing in a grassy area off the pavement. He also testified that 10 or 12 picketers were standing along the guardrail directly opposite the school's entrance. After making sure there was no on-coming traffic, Mr. Legg slowly began to turn left. Mr. Legg testified that as he started to turn left, "Lykins walked over off the edge of the grass into the driveway, took his picket sign and then hit my windshield with it." Mr. Legg testified that he stopped his vehicle and turned to look at Lykins. He testified that Lykins "had this big grin on his face * * *." Mr. Legg then looked in his side mirror and saw Terri Whittaker flashing her lights at him. He testified that the people near the guardrail had started to cluster in the middle of the road so he drove away. As he drove away, he tried to use his cellular phone to call the school's main office, but he was unable to get a usable signal.
 {¶ 13} Following Mr. Legg's testimony, Terri Whittaker, a science teacher at Eastern High School, testified. According to Ms. Whittaker, she was following directly behind Mr. Legg as he left the school. Ms. Whittaker testified that as Mr. Legg was turning left, Lykins walked towards the vehicle, took his sign, and hit downwards. When asked if she actually saw Lykins' sign hit Mr. Legg's vehicle, she indicated that she had.
 {¶ 14} Tracy Linscott, a social studies teacher at Eastern High School, was the last of appellee's witnesses to testify about the incident. Ms. Linscott testified that she followed Mr. Legg and Ms. Whittaker as they left the school on October 31, 2002. According to Ms. Linscott, Lykins took 3 or 4 steps towards Mr. Legg's vehicle. She testified that she saw Lykins moving towards the vehicle and then saw his picket sign fall apart. However, she indicated that she did not see Lykins' sign strike Mr. Legg's vehicle.
 {¶ 15} In their defense, appellants presented the testimony of Ray McFarland, president of ELCTA. Mr. McFarland testified that he and Lykins picketed at the entrance to the school on the afternoon of October 31, 2002. According to Mr. McFarland, he stood on the right side of the school's drive and Lykins stood on the left. Mr. McFarland testified that he did not see Lykins strike or attempt to strike Mr. Legg's vehicle as it left. However, he testified that after Mr. Legg turned left, "he looked and hit his brakes and he reached down grabbing for something."
 {¶ 16} Following Mr. McFarland's testimony, Micki Atkins, a member of ELCTA, testified. Ms. Atkins testified that she was near the guardrail opposite the school's entrance on October 31, 2002. According to Ms. Atkins, Lykins raised his picket sign as Lykins turned left out of the school. Ms. Atkins also testified that she saw Lykins' picket sign fall apart. However, she indicated that at no time did she see Lykins strike Mr. Legg's vehicle.
 {¶ 17} Lykins also testified at the hearing. Lykins testified that he picketed on the left side of the school's entrance on the afternoon of October 31, 2002. According to Lykins, he raised his picket sign up in front of Mr. Legg's windshield as Mr. Legg left the school. At that point, the staple came out of his sign and it fell apart. However, he testified that he did not strike Mr. Legg's vehicle with his sign.
 {¶ 18} Finally, appellants presented videotape footage of the incident. Steven Woods, a member of ELCTA, testified that he recorded the incident while standing near the guardrail opposite the school's entrance. He further testified that he did not record all of the picketing, just parts of it. The time indicator at the bottom of the video footage shows that it began filming at 3:21 p.m. The video shows Mr. Legg completing his left turn and driving away. While doing so, he looks in Lykins' direction and then reaches for something in the vehicle. When confronted with the video on cross-examination, Mr. Legg testified that the video shows what occurred after Lykins hit his vehicle. He indicated that in the video he is reaching for his cellular phone.
 {¶ 19} The trial court found Mr. Legg's actions on the videotape to be consistent with appellee's allegations and Mr. Legg's testimony. Furthermore, the court found that the testimony of the teachers in the vehicles behind Mr. Legg confirmed the fact that Lykins violated the permanent injunction. We are mindful that the weight of the evidence and the credibility of witnesses are issues for the trier of fact. Cole v. CompleteAuto Transit, Inc. (1997), 119 Ohio App.3d 771, 777-778,696 N.E.2d 289; White v. White, Gallia App. No. 03CA11,2003-Ohio-6316, ¶ 15. The underlying rationale for this is that the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 20} Mr. Legg and Ms. Whittaker both testified that Lykins struck Mr. Legg's windshield with his picket sign. Contrary to appellants' assertion, the videotape does not contradict their testimony. Rather, as the court noted, Mr. Legg's actions on the videotape are consistent with his testimony. As for appellants' witnesses, the trier of fact is free to believe all, part or none of the testimony of any witness who appears before it. SeeRogers v. Hill (1998), 124 Ohio App.3d 468, 470,706 N.E.2d 438. Thus, the court was free to disbelieve Lykins' assertion that he did not strike Mr. Legg's vehicle. Having reviewed the record, we conclude there is some competent, credible evidence to support the trial court's finding that Lykins violated the court's permanent injunction by threatening and intimidating Mr. Legg. Accordingly, appellants' first argument has no merit.
 {¶ 21} In their second argument, appellants contend the court erred by holding them liable for Lykins' conduct. They argue a union may only be held liable for the contemptuous acts of its members if the union authorized, condoned, or ratified the acts. Appellants argue there is no evidence that they authorized, condoned, or ratified Lykins' conduct. In response, appellee advances two arguments in support of appellants' liability for Lykins' conduct. First, appellee argues appellants are liable for Lykins' conduct because of Lykins' status as a union leader. Appellee relies on State v. Local Union 5760 (1961),172 Ohio St. 75, 173 N.E.2d 331, to support this argument.
 {¶ 22} Jimmy Lykins drives a bus for Eastern Local Schools and is an active member in ELSSPA. Before the strike began, Lykins served on the strike crisis committee. When ELSSPA went on strike in September 2002, Lykins participated in the strike. In addition to picketing, Lykins served as a bargaining team member. He also provided the trailer that served as strike headquarters.
 {¶ 23} In Union Local 5760, 172 Ohio St. 75, paragraph eight of the syllabus, the Supreme Court of Ohio held: "A labor union may be liable for contempt of court based upon the contemptuous acts of its union officials. In such case, the acts of such officials are deemed to be acts of the union." However, this holding addresses a labor union's liability for the contemptuous acts of its officials, not its members. Although Lykins is a member of and actively involved in ELSSPA, he testified at the hearing that he has never held any office in ELSSPA. Thus, there is no evidence in the record to indicate that Lykins is a "union official".
 {¶ 24} We find appellee's reliance on Union Local 5760 to be misplaced as nowhere in the opinion does the Ohio Supreme Court hold that a labor union is per se liable for the contemptuous acts of its members. However, Union Local 5760
sets forth the circumstances under which a labor union may be liable for contempt based on the acts of its members. In UnionLocal 5760, the Supreme Court of Ohio stated: "Labor union officials during the conduct of a strike have a duty to make reasonable efforts to prevent members of their union from interfering with or obstructing a court officer in the execution of a court process, and facts which indicate either a failure to make reasonable efforts to prevent such interference or an approval of or actual participation in such conduct subject the labor union officials and their union to charges of contempt of court." Union Local 5760, 172 Ohio St. 75, paragraph seven of the syllabus. Thus, a labor union may be liable for contempt based on the acts of its members if the union approved of (authorized or ratified) or actually participated in the contemptuous acts. Id. A labor union may also be liable for the contemptuous acts of its members if the union failed to make reasonable efforts to secure compliance with the court's order.Id. See, also, Austin Powder Co. v. Teamsters Local Union,159 (May 6, 1981), Vinton App. No. 376.
 {¶ 25} Appellee presented no evidence establishing that appellants approved of or actually participated in the contemptuous conduct. Appellee argues, however, that appellants failed to make reasonable efforts to ensure compliance with the court's permanent injunction. Appellee argues there is no evidence of any specific efforts undertaken by appellants to secure compliance with the court's injunction.
 {¶ 26} A review of the record indicates appellee did not allege in its motion for order to show cause that appellants failed to make reasonable efforts to secure compliance with the court's order. Nor did appellee argue during the hearing that appellants failed to make reasonable efforts to secure compliance with the court's order. Not until after the hearing, when ordered by the court to submit post-hearing briefs addressing appellants' liability for Lykins' actions, did appellee first raise the issue of appellants' failure to make reasonable efforts to secure compliance with the court's order.
 {¶ 27} Appellee now argues appellants failed to offer evidence about the specific efforts they took to ensure compliance with the court's injunction. As a general rule, where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. See Skinner v. Le-Ax WaterDistrict (May 5, 1984), Athens App. No. 1171; Runck v. Runck
(May 4, 1992), 12th Dist. No. CA91-07-049. See, also, 42 Ohio Jurisprudence 3d (1983), 329, Evidence and Witnesses, Section 100; 31A Corpus Juris (1996), 266-267, Evidence, Section 129. However, this rule requires that there first be a negative averment.
 {¶ 28} Appellee bore the burden of proving that Lykins' violated the permanent injunction and that appellants were liable for his contemptuous conduct. Therefore, appellee bore the burden of proving that appellants failed to make reasonable efforts to secure compliance with the court's order. This required appellee to allege at the outset that appellants failed to make reasonable efforts to secure compliance with the court's order. Had appellee done so, the burden of going forward with evidence would have shifted to appellants.[1] However, this burden of going forward with the evidence does not shift absent an allegation that the union failed to make reasonable efforts. Moreover, although the burden of going forward with the evidence shifts, the burden of proof remains on the party seeking to hold the union liable for contempt. Because appellee did not raise the allegation during the hearing, it failed to meet its burden of proof regarding appellants' failure to make reasonable efforts to secure compliance with the court's injunction.
 {¶ 29} The trial court found appellants liable for Lykins' conduct based upon his status as a member of ELLSPA. Specifically, the court stated: "* * * Defendant's, by the action of their member, Jimmy Lykins, an active union member, are in Contempt of this Court's Injunction Order." However, a union is not liable for an individual's contemptuous acts simply because the individual is a member of the union. Rather, there must be evidence that the union either (1) approved of or participated in the contemptuous act or (2) failed to make reasonable efforts to secure compliance with the court's order. Union Local 5760, 172 Ohio St. 75, paragraph seven of the syllabus. Here, there is no evidence that the appellants approved of or actually participated in the contemptuous conduct. In addition, appellee did not satisfy its burden of showing that appellants failed to make reasonable efforts to secure compliance with the court's injunction. Absent such evidence, the court's contempt finding is unreasonable, unconscionable and arbitrary. Accordingly, we find merit in appellants' second argument and reverse the judgment of the trial court.
 {¶ 30} Appellants' third and fourth arguments challenge the amount awarded for attorney's fees and vehicle repair. However, our resolution of appellants' second argument renders these remaining arguments moot.
Judgment reversed.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] If, however, the party making the allegation is in possession of evidence establishing that the union failed to make reasonable efforts to secure compliance with the court's order, the party must produce that evidence.