[Cite as *McCall v. Kranz*, 2016-Ohio-214.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Neal D. McCall, | : | |
| Plaintiff-Appellant, | : | No. 15AP-436 |
| | | (C.P.C. No. 12DR-4720) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kay A. Kranz, | : | |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on January 21, 2016

*The Law Office of Nicholas W. Yaeger, LLC,* **and** *Nicholas W. Yaeger*, **for appellant.**

*Babbitt & Dahlberg, LLC*, *Gerald J. Babbitt*, **and** *C. Gustav Dahlberg*, **for appellee.**

**APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations**

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Neal D. McCall, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding McCall in contempt of court, awarding attorney fees to defendant-appellee, Kay A. Kranz, and awarding spousal support to Kranz. For the reasons that follow, we affirm in part and reverse in part.

I. **Facts and Procedural History**

{¶ 2} This matter was initiated by McCall in December 2012 when he filed a complaint for divorce. In response, Kranz filed an answer and counterclaim for divorce. On December 6 and 28, 2012, the trial court issued temporary restraining orders prohibiting the parties from engaging in certain conduct relating to each other and their

property.  On April 22, 2013, the trial court issued a temporary order, effective January 1, 2013, imposing certain financial obligations on the parties, including requiring McCall to pay temporary spousal support in the amount of $1,000 per month.  In April and July 2014, Kranz filed motions for contempt against McCall, alleging he failed to abide by the trial court's orders.  The matter proceeded to trial in July 2014.  Both parties testified at trial, and expert witness testimony was presented regarding the parties' economic circumstances and Kranz's mental health problems.

{¶ 3}  On March 27, 2015, the trial court issued its Judgment Entry-Decree of Divorce (the "Decree").  As pertinent here, the trial court found McCall to be in contempt for multiple violations of the trial court's pretrial orders.  Based on its contempt findings, the trial court ordered McCall to purge any remaining spousal support arrearage, and ordered him to pay $3,643.75 in attorney fees to Kranz for her expenses related to the prosecution of her contempt motions.  The trial court sentenced McCall to serve five days in the Franklin County Correction Center for the contempt, with the sentence suspended to afford McCall a meaningful opportunity to purge.  The trial court also ordered McCall to pay spousal support to Kranz in the amount of $2,500 per month for eight years.  Lastly, pursuant to R.C. 3105.73(A), the trial court ordered McCall to pay Kranz $25,000 towards her attorney fees and other costs associated with this litigation.

{¶ 4}  McCall timely appeals.

## II.  Assignments of Error

{¶ 5}  McCall assigns the following errors for our review:

> [1.] The trial court erred as a matter of law and abused its discretion by finding the appellant in contempt of court for allegedly violating the court's spousal support orders and for violating the trial court's temporary restraining order.
>
> [2.] The trial court's attorney fee award is punitive in nature, is not reasonable nor appropriate, not in the interests of justice and constitutes an abuse of discretion.
>
> [3.] The trial court's spousal support award is an abuse of discretion as to its duration.

## III.  Discussion

## A.  First Assignment of Error – Contempt Order

{¶ 6}  In his first assignment of error, McCall asserts the trial court abused its discretion in finding him in contempt of court for violating the trial court's pretrial orders. McCall argues the trial court erroneously found he violated the trial court's order regarding the availability of a Discover credit card for Kranz's use.  McCall also argues the trial court erroneously found him in contempt for not immediately liquidating a spousal support arrearage.   McCall further argues the trial court erroneously found him in contempt due to his use of the home equity line of credit and his personal line of credit. Lastly, in connection with McCall's argument that the trial court abused its discretion in finding him in contempt, he argues the trial court committed error by ordering him to reimburse Kranz $3,643.75 in attorney fees due to McCall's violations of the trial court's orders.

{¶ 7}  Contempt of court "results when a party before a court disregards or disobeys an order or command of judicial authority," or otherwise acts in a way that "substantially disrupt[s] the judicial process in a particular case."  *Byron v. Byron,* 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11, citing *First Bank of Marietta v. Mascrete, Inc.,* 125 Ohio App.3d 257, 263 (4th Dist.1998).  "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice."  *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph two of the syllabus.  Contempt is classified as either direct or indirect.  *Byron* at ¶ 12.  "Direct contempt occurs in the presence of the court in its judicial function."  *Id.*, citing R.C. 2705.01.   Indirect contempt occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders.  *Id.,* citing *State v. Drake,* 73 Ohio App.3d 640, 643 (8th Dist.1991).

{¶ 8}  "The distinction between civil and criminal contempt depends upon the character and purpose of the punishment imposed."  *Id.* at ¶ 12, citing *State ex rel. Johnson v. Perry Cty. Court,* 25 Ohio St.3d 53, 55 (1986).  Civil contempt is remedial or coercive in nature and is imposed to benefit the complainant.  *Id.,* citing *Pugh v. Pugh,* 15 Ohio St.3d 136, 139 (1984).  Generally, contempt proceedings in domestic relations matters, including those based on failure to pay court-ordered spousal support, are civil in

nature because the purpose is to coerce or encourage future compliance with the court's orders. *Ryan v. Ryan,* 10th Dist. No. 14AP-28, 2014-Ohio-3049, ¶ 12, citing *Fidler v. Fidler,* 10th Dist. No. 08AP-284, 2008-Ohio-4688, ¶ 11, citing *Turner v. Turner,* 10th Dist. No. 98AP-999 (May 18, 1999); *Byron; DeMarco v. DeMarco,* 10th Dist. No. 09AP-405, 2010-Ohio-445, ¶ 25.

{¶ 9}　It is well-settled that to find a litigant in contempt, the court must find the existence of a valid court order, that the offending party had knowledge of such order, and that such order was, in fact, violated. *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295 (10th Dist.1990). To demonstrate civil contempt, the violation of a court order must be demonstrated by clear and convincing evidence. *Ryan* at ¶ 12, citing *Rife v. Rife,* 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 10, citing *Hopson v. Hopson,* 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 19. But, in the civil context, intent to violate the order need not be proved. *Windham Bank* at paragraph three of the syllabus; *Pugh* at paragraph one of the syllabus. Once the complainant has satisfied his or her initial burden of demonstrating the other party violated a court order, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence. *Ryan* at ¶ 12.

{¶ 10} An appellate court will not reverse a trial court's finding of contempt absent an abuse of discretion. *Rife* at ¶ 9, citing *Hopson* at ¶ 9. An abuse of discretion means more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**1. Discover Credit Card**

{¶ 11} Paragraph 9(a) of the magistrate's April 22, 2013 temporary order required McCall to pay up to $500 per month on the debt associated with the parties' Discover credit card. That order also included the following provisions: "[Kranz] may utilize the joint Discover card and [McCall] shall be obligated to pay up to $500 per month per 9(a) above. Any charges [Kranz] makes on said card over $500 each month shall be the responsibility of [Kranz]. [McCall] shall not utilize the Discover card." (Magistrate's Temporary Order, ¶ 10.) Additionally, the December 28, 2012 temporary restraining order generally precluded McCall "from interfering with [Kranz's] use of credit card for ordinary/customary use." McCall asserts he made monthly payments to ensure at least

$500 in credit on the Discover card was available for Kranz's use and, therefore, complied with the temporary orders as to that card.  The trial court determined McCall was in contempt of court for violating his obligations regarding the Discover card.

{¶ 12} The trial court's finding that McCall violated its order regarding the Discover card was not an abuse of discretion because it was supported by the undisputed facts.  In late 2012 and early 2013, McCall took steps to lower the credit limit on the Discover card from $15,000 to $1,800.  Each monthly Discover card statement was delivered to McCall, and Kranz had no access to the statements.  Before Kranz gained exclusive use of the Discover card, McCall would generally pay the entire monthly balance due on that card.  After Kranz gained exclusive use of the Discover card, McCall would pay approximately $500 (sometimes more than $500 and sometimes less than $500) to ensure the credit limit available to Kranz would not exceed $500 for a particular monthly billing cycle.  Thus, McCall made a "deliberate decision" to permit no more than $500 in credit on the Discover card to be available to Kranz.  (July 30, 2014 Tr. Vol. II, 297.)  Due to McCall only paying approximately $500 each month, there were a number of instances in which the card was declined when Kranz attempted to use it.

{¶ 13} The trial court reasonably viewed McCall's actions as an "intentional manipulation of [the] credit card balance" that resulted in multiple instances in which $500 was not available for Kranz's use.  (Divorce Decree, 6.)  This manipulation violated the trial court's directives regarding the use of the Discover card because it impeded Kranz's use of the card as contemplated by the trial court's order.  Therefore, the trial court did not abuse its discretion by finding McCall violated the trial court's order as to the Discover card.

## 2.  Spousal Support Arrearage

{¶ 14} The trial court's April 22, 2013 temporary order required McCall to pay temporary spousal support in the amount of $1,000 per month, by the fifth of each month.  (R. 1394.)  Because the effective date of that order was January 1, 2013, the temporary order created an immediate spousal support arrearage of $4,000.  Although the April 22, 2013 order created an arrearage, the court did not issue any order directing McCall to pay the arrearage by a certain date, nor did McCall immediately liquidate it.  Instead, McCall paid $200 every month on the arrearage, which would have fully

liquidated it by December 2014. Even though McCall had been making these payments to eliminate the arrearage, the trial court determined McCall was in contempt because he "unilaterally determined he would liquidate [the $4,000 arrearage] at $200 a month – despite having ample credit (and apparently no aversion to paying interest) to immediately satisfy his obligation." (Divorce Decree, 6.)

{¶ 15} McCall concedes that he owed $4,000 in spousal support arrearage upon the filing of the April 22, 2013 temporary order. However, he argues the trial court abused its discretion by finding him in contempt because the trial court did not order payment of the $4,000 by a date certain and because his $200 per month payment was reasonable. We agree.

{¶ 16} To be sure, the April 22, 2013 temporary order required McCall to pay the $4,000. However, McCall did not create the arrearage due to a failure to pay spousal support for one or more months. *Cf. Wise v. Wise*, 9th Dist. No. 19167 (Apr. 14, 1999) (finding of contempt when party did not pay monthly child and spousal support). Rather, the retroactive nature of the trial court's temporary order imposing the spousal support obligation created the arrearage, and the trial court's order did not require McCall to pay that amount immediately upon the filing of the order. In the absence of a specific time for the payment of a debt, divorce courts have applied a reasonable length of time. *See McFarland v. McFarland*, 5th Dist. No. 01CA00021 (Oct. 21, 2001) ("in determining the defendant's compliance with [an order, directing the defendant to pay certain debts, that does not set a repayment schedule], the common standard of reasonable length of time is appropriate.").

{¶ 17} Thus, in the absence of a requirement that McCall immediately pay the $4,000 obligation, and considering the arrearage was created due to the retroactive nature of the temporary order and not McCall's failure to pay a monthly support obligation, we find that McCall acted reasonably in paying $200 per month until the $4,000 was paid in full. Because there was no clear and convincing evidence that McCall violated a court order regarding his spousal support obligation, the trial court's finding of contempt as to this issue constituted an abuse of discretion.

### 3. Home Equity and Personal Lines of Credit

{¶ 18} The December 28, 2012 temporary restraining order provides in part: "[McCall] is hereby restrained from disposing of, transferring, or removing for the purpose of sale or sequester, conveying, destroying, damaging or encumbering assets, property or any part thereof so as not to defeat the other party in obtaining spousal support or a distributive award, or an equitable division of marital property." This order also states: "[McCall] is restrained from the sale, gift, transfer, conveyance or encumbrance of any tangible property, or the disposition or delivery thereof, by [McCall] or by third party holding such property for or on behalf of [McCall]."

{¶ 19} The trial court concluded McCall had violated the restraining order when he impermissibly increased the parties' indebtedness by further encumbering the parties' property by using the home equity line of credit and by securing and using a new personal line of credit. Regarding his use of the home equity line of credit, McCall makes two arguments. First, he argues his use of the home equity line of credit did not encumber any asset in a manner that would defeat Kranz's ability to obtain an equal division of marital assets or support. Second, he argues that because Kranz obtained $15,000 from the home equity line of credit, it was inequitable for the trial court to find him in contempt for also using the home equity line of credit. These arguments are unpersuasive.

{¶ 20} The evidence supports the trial court's determination that McCall violated the December 28, 2012 temporary restraining order by encumbering a marital asset. It is undisputed that, after the trial court filed the December 28, 2012 temporary restraining order, McCall used the home equity line of credit to pay car repair and attorney expenses. McCall argues that for the trial court to issue an order of contempt, Kranz needed to prove that encumbering the marital property resulted in Kranz not "obtaining spousal support or a distributive award, or an equitable division of marital property." (Emphasis deleted.) (McCall Brief, 15.) However, this argument fails because the language McCall cites was used to emphasize the possible negative consequences of encumbering assets; the language did not create a condition precedent to find that the conduct encumbering an asset violated the restraining order.

{¶ 21} McCall's reference to the $15,000 obtained by Kranz is also unavailing. A memorandum of agreement, filed on April 16, 2014 and signed by the parties and the

magistrate, provided that $15,000 of the home equity line of credit would be made available to Kranz as expense money. This memorandum of agreement did not, however, otherwise alter the December 28, 2012 temporary restraining order's restriction on encumbering assets. Because McCall encumbered the marital residence when he used the home equity line of credit, he was in contempt of the trial court's order prohibiting such conduct.

{¶ 22} As to McCall's personal line of credit, the trial court found McCall's opening and using this line of credit violated the trial court's December 28, 2012 temporary restraining order. This finding is not supported by the evidence. It is undisputed that this line of credit did not encumber any asset. Kranz argues that, while the personal line of credit did not encumber any asset, it did increase McCall's total debt and would potentially limit the amount of money that would be available to pay spousal support due to servicing the debt. However, the trial court's December 28, 2012 temporary restraining order did not prohibit McCall from obtaining or using an unsecured personal line of credit. Because McCall's personal line of credit did not encumber any "assets, property or any part thereof," it was an abuse of discretion for the trial court to find McCall in contempt for opening and using the personal line of credit.

## 4. Award of Attorney Fees for McCall's Civil Contempt

{¶ 23} A trial court has discretion to include reasonable attorney fees as part of costs taxable to a party found guilty of civil contempt. *Grundey v. Grundey*, 10th Dist. No. 13AP-224, 2014-Ohio-91, ¶ 34, citing *State ex rel. Fraternal Order of Police v. Dayton,* 49 Ohio St.2d 219 (1977), syllabus. This discretion exists, even in the absence of statutory authority empowering a court to include attorney fees as part of the costs. *Fraternal Order of Police* at 228-29.

{¶ 24} Here, the trial court ordered McCall to reimburse Kranz "the sum of $3,643.75 as and for attorney fees related to the prosecution of her Motions for Contempt." (Divorce Decree, 8.) As to this attorney fees award, McCall argues the trial court failed to make any finding as to the reasonableness of the award and to properly consider Kranz's prior receipt of $15,000 in attorney fees. Because we have reversed two of the contempt findings, as discussed above, we must also reverse and remand for further consideration the attorney fees awarded due to the motions for contempt. Thus, McCall's

specific arguments relating to the amount of attorney fees awarded as costs due to McCall's contempt are moot.

{¶ 25} For the foregoing reasons, we sustain in part and overrule in part McCall's first assignment of error.

## B. Second Assignment of Error – R.C. 3105.73(A) Attorney Fees Award

{¶ 26} In his second assignment of error, McCall asserts the trial court's attorney fees award in the amount of $25,000 pursuant to R.C. 3105.73(A) constituted an abuse of discretion. Specifically, McCall argues the trial court awarded more in attorney fees than what the trial court had found to be reasonable, and the amount of the trial court's award is not supported by the facts the court relied on.

{¶ 27} R.C. 3105.73(A) provides that "[i]n an action for divorce * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In making this equitable determination, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Settele v. Settele*, 10th Dist. No. 14AP-818, 2015-Ohio-3746, ¶ 51.

{¶ 28} Here, the trial court found it fair and equitable to require McCall to pay $25,000 towards Kranz's attorney fees pursuant to R.C. 3105.73(A). In making this determination, the trial court considered the parties' marital assets and income, the trial court's award of temporary spousal support, the parties' conduct, and other relevant factors. The trial court specifically considered its prior determination that McCall was in contempt for not immediately liquidating the arrearage created by the April 22, 2013 temporary order and McCall's "contempt of Court orders and * * * other concerning actions that [McCall] has undertaken." (Divorce Decree, 26.) As discussed above, it was an abuse of discretion for the trial court to find McCall in contempt for failing to immediately liquidate the judicially created arrearage, and for actions taken related to the personal line of credit. Because the trial court considered its contempt findings as part of its attorney fees analysis under R.C. 3105.73(A), and because we have found the contempt findings relating to the spousal support arrearage and the personal line of credit

erroneous, we sustain McCall's second assignment of error. Consequently, the issue of the amount of attorney fees to award pursuant to R.C. 3105.73(A) must be remanded for further consideration by the trial court.

## C. Third Assignment of Error – Spousal Support Award

{¶ 29} In his third assignment of error, McCall asserts the trial court abused its discretion in ordering him to pay spousal support to Kranz for eight years. McCall does not challenge the amount of the monthly spousal support; he only challenges the duration. We find this assignment of error to be without merit.

{¶ 30} R.C. 3105.18(A) generally defines "spousal support" as payments "to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse." "In divorce and legal separation proceedings * * * the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and the duration of spousal support, the court must consider all of the following factors:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the marriage;
>
> (h) The relative extent of education of the parties;

> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
>
> (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
>
> (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
>
> (l) The tax consequences, for each party, of an award of spousal support;
>
> (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
>
> (n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1). "The trial court must consider all of these factors; it may not base its decision regarding spousal support on any one factor in isolation." *Gallo v. Gallo*, 10th Dist. No. 14AP-179, 2015-Ohio-982, ¶ 49, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96 (1988). An appellate court will not reverse a trial court's determination as to spousal support absent an abuse of discretion. *Id.*, citing *Havanec v. Havanec*, 10th Dist. No. 08AP-465, 2008-Ohio-6966, ¶ 23.

{¶ 31} Here, the trial court analyzed all of the factors set forth in R.C. 3105.18(C)(1) and, based on that analysis, ordered McCall pay $2,500 per month in spousal support to Kranz for eight years. McCall argues he did not receive "credit" for timely paying the spousal support as ordered during the 18 months of divorce proceedings. McCall also argues the duration of the eight-year spousal support award, when combined with the 18 months of temporary spousal support, is grossly out of balance with the duration of the marriage and reflects the trial court's erroneous view that Kranz is unable to work. Finally, McCall argues the trial court erroneously found Kranz unable to work. We disagree with each of these arguments.

{¶ 32} First, contrary to McCall's argument, in determining the terms of the spousal support award, the trial court expressly considered the spousal support payments McCall made pursuant to the temporary order.  Thus, McCall received "credit" for making spousal support payments during the pendency of the divorce proceedings.

{¶ 33} Second, the trial court expressly considered the fact that the parties' marriage of nearly 12 years was "of only moderate duration."  (Divorce Decree, 18.) Although Kranz requested a spousal support award of indefinite duration, the trial court reasonably concluded an award of limited duration was more appropriate.  *See MacMurray v. Mayo*, 10th Dist. No. 07AP-38, 2007-Ohio-6998, ¶ 8, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64 (1990), paragraph one of the syllabus ("Where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for terminating the award within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.").  McCall fails to demonstrate that the duration of the marriage required the trial court to award spousal support for less than eight years.  Moreover, McCall's argument only addresses the duration of marriage, without considering other relevant factors favoring the award.

{¶ 34} Finally, McCall's argument that the trial court erroneously found Kranz unable to work is similarly unpersuasive.  The trial court did not find that Kranz cannot work.  Instead, the trial court detailed Kranz's mental health issues and the barriers those pose to her quality of life and general functioning in society.  The trial court found a significant disparity in income and earning capacity between the parties, noting the parties stipulated to Kranz's possible earning capacity of $18,855 per year.  This stipulation was consistent with licensed psychologist Dr. Bruce Growick's report, which indicated Kranz has the education and vocational capability to work as a retail clerk, a position with an average salary in central Ohio of $18,855 per year.  Dr. Growick noted the average salary for 50-55 year-old females with a high school diploma in Ohio is $34,945 per year, but Kranz's expected salary would be substantially less than other females of her age and education because she has not worked consistently over the past 20 years.  In contrast, McCall's average salary nears six figures.  Considering Kranz's age and mental health issues, the trial court reasonably concluded that Kranz "is unlikely to

ever gain the level of education and experience necessary to earn an income which is even remotely comparable to that of [McCall]." (Divorce Decree, 22.) Thus, while the trial court concluded that a significant level of income disparity would continue, it did not find Kranz incapable of working as McCall argues. Consequently, we reject McCall's argument based on the income findings.

{¶ 35} Because the trial court did not abuse its discretion in ordering McCall to pay monthly spousal support to Kranz for eight years, we overrule McCall's third assignment of error.

## IV. Disposition

{¶ 36} Having sustained in part and overruled in part McCall's first assignment of error, sustained McCall's second assignment of error, and overruled McCall's third assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. Consequently, this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

KLATT and BRUNNER, JJ., concur.

_____