[Cite as *Austin v. Austin*, 2016-Ohio-7900.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| AMY L. AUSTIN (Vorpe) | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27129 |
| | : | |
| v. | : | T.C. NO. 03DM631 |
| | : | |
| STEPHEN B. AUSTIN | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the ___23rd___ day of _____November___, 2016.

. . . . . . . . . . .

MARK D. WEBB, Atty. Reg. No.0085089, 140 N. Main Street, Suite B, Springboro, Ohio 45066
    Attorney for Plaintiff-Appellee

MICHAEL J. DAVIS, Atty. Reg. No. 0046952, 8567 Mason Montgomery Road, P. O. Box 1025, Mason, Ohio 45040
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Stephen Austin appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied his motion to hold his former wife, Amy Vorpe, in contempt of court. For the following reasons, the judgment

of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2}   In 2003, Austin and Vorpe were granted a decree of dissolution of marriage; they had been married for more than eight years, and they had two minor children, a son and a daughter.   The decree incorporated a separation agreement in which the parties had agreed to shared parenting.   The shared parenting plan stated that the children's primary residence would be with Vorpe, and that Austin would have parenting time, at a minimum, as set forth in the standard order of parenting time.

{¶ 3}   On January 16, 2014, an Agreed Order was filed that resolved several pending motions related to parenting time, contempt, and other matters.   At this time, the children were 15 and 12 years old.   The Agreed Order required that, until Austin and the children engaged in counseling, Austin's parenting time be limited to attending the extracurricular and school activities of his children; he was not allowed to have contact with them at these events.[1]   The parties also agreed to mutually select a counselor for Austin and the children, to help them improve their relationships and deal with "their issues."   The counselor was to report and make recommendations to the court related to future parenting time.   The matter was set for further review in May 2014, but was continued at least twice due to the parties' inability to agree on a counselor and/or to find one who was willing to participate.

---

[1] The Agreed Order mirrored, in pertinent part, a "consent agreement" and domestic violence civil protection order that was entered in Montgomery Case No. 13 DV 669, an action in which Vorpe sought a CPO against Austin on behalf of her children.   In the consent agreement and CPO, filed on December 17, 2013, Austin agreed that his contact with the children would be limited to extracurricular and school activities, until further input could be obtained from a counselor.

{¶ 4}   Although the details are not well-developed in the record, it is apparent that Austin and his son were involved in a physical altercation at some point in late 2013, which precipitated a domestic violence civil protection order (CPO) and the Agreed Order. Furthermore, on December 25, 2014, after counseling had begun, Austin stood at a busy intersection in the children's hometown, holding a sign protesting parental alienation. The children learned of this protest through social media and were embarrassed by it, which led to a significant setback with regard to their counseling and a greater reluctance to attend.

{¶ 5}   On February 10, 2015, Austin filed a motion to show cause why Vorpe should not be held in contempt for refusing to permit parenting time in accordance with a March 2010 judgment (predating the Agreed Order), for not "engaging [the] children in counseling as previously ordered," for parental alienation, and for altering a court document (the CPO). The matter was set for a hearing on March 10, 2015, and the hearing continued over three additional days in May, July, and August 2015.

{¶ 6}   On September 28, 2015, the magistrate issued a decision overruling Austin's request for a finding of contempt against Vorpe. In particular, the magistrate found that Vorpe had not violated any parenting time order and that she had encouraged the children to attend counseling sessions through discipline and positive incentives, despite their resistance. The magistrate found that the complaint regarding Vorpe's alteration and use of the CPO did "not violate a specific order" of the court. The court further found that Austin had made his already-poor relationships with his children much worse by engaging in a physical confrontation with his son (which strongly affected both children), indulging in public protests which placed his interests above those of his

children, and struggling to show "age appropriate empathy and support" for his children and to separate his relationship with his ex-wife from his relationships with his children.

{¶ 7} Austin filed objections and supplemental objections to the magistrate's decision. On April 28, 2016, the trial court overruled all of Austin's objections and his motion that Vorpe be found in contempt.

{¶ 8} Austin raises three assignments of error on appeal.[2]

**II. Parenting Time**

{¶ 9} In his first assignment of error, Austin contends that the trial court erred in "modifying" the parties' shared parenting agreement without considering the factors set forth in R.C. 3109.04, including the children's best interest. In his second assignment, he argues that the court abused its discretion in failing to grant him parenting time.

{¶ 10} As discussed above, it was the trial court's January 16, 2014 judgment that arguably modified the shared parenting arrangement; the most important aspect of that judgment was that it eliminated visitation between Austin and the children until a counselor could become involved in the case and make recommendations to the court. Austin consented to this modification in the Agreed Order, as well as in the proceedings related to the CPO. Austin did not appeal from this judgment.

{¶ 11} The matter currently before this court is Austin's appeal from the trial court's April 28, 2016 denial of his motion for a finding of contempt. Although other decisions of the trial court are obviously part of the history of the case, Austin may not

---

[2] We note that the assignments of error in the Table of Contents of Austin's brief appear to relate to a different case and differ from the assignments of error discussed in the body of the brief, which relate to this case. We refer to the assignments of error in the body of the brief.

raise issues on appeal that are unrelated to the judgment from which his appeal is taken. Because the April 28, 2016 judgment did not modify the shared parenting arrangement, the trial court was not required to include in that judgment a finding as to the children's best interest or any other findings relevant to a change in shared parenting.

{¶ 12} Similarly, Austin's second assignment of error asserts that the trial court erred and abused its discretion in failing to grant him parenting time. But no request for parenting time (or for relief from the suspension of parenting time) had been filed with the court. Austin's motion to show cause asserted that Vorpe should be held in contempt for "refusing to permit parenting time." It is clear from the record that the only "parenting time" in effect prior to the filing of the motion to show cause was Austin's permission to attend the children's extracurricular activities, without making contact with the children. Austin did not allege that he was being prohibited from attending such activities. As such, the trial court found that "[n]o discernible provision of an order of the court ha[d] been violated" with respect to Austin's attendance at or knowledge of the children's extracurricular activities. However, it did order that, in the future, Vorpe "shall personally ensure that information as to all academic, school activity and extracurricular activities (including sports) is forwarded to [Austin]."

{¶ 13} Because the trial court's judgment did not relate to a motion for parenting time, and no such motion was pending, Austin's argument that the trial court erred in failing to grant parenting time is without merit. Further, to the extent Austin is appealing the court's denial of his motion to hold Vorpe in contempt for violating the previous court orders with respect to parenting time, we find no error.

{¶ 14} The first and second assignments of error are overruled.

### III. Contempt

{¶ 15}  In his third assignment of error, Austin argues that the trial court erred and abused its discretion in failing to find Vorpe in contempt for altering court documents. This argument relates to evidence that Vorpe gave her son an altered copy of the CPO, which the son then gave to one of his coaches; the CPO was altered such that the expiration date of the order was obscured.

{¶ 16}  We review the trial court's decision whether to find a party in contempt under an abuse of discretion standard.  *Hoagland v. Hoagland*, 2d Dist. Miami No. 2014 CA 30, 2015-Ohio-2426, ¶ 8, citing *Goddard-Ebersole v. Ebersole,* 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 15*.*  An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17}  Vorpe testified that, in the fall of 2014, her son had been concerned about missing football practices and "being benched" due to the court-ordered counseling sessions he attended after school.  The son had asked for a copy of the court order to give to his coaches, so they would know it was "out of [her son's] control" that he missed practices.   By this time, the "effective until" date of the CPO (June 10, 2014) had passed, but the parties were still under the order of the domestic relations court to attend counseling.  Because the counseling order was still in effect (albeit through the domestic relations order), and because she "did not want the coach to think [her son was] giving a bogus or expired CPO, [she] just whited out the date" before her son gave the CPO to the coaches.  Vorpe also testified that she was confused about the expiration date of the

CPO, because it stated that it was a "one year order" (filed on December 17, 2013), but it also stated that it was effective until June 10, 2014. One of the football coaches, who was also a school counselor, apparently shared information about the CPO with other school officials and, for a time, Austin stopped receiving information about school activities.

{¶ 18} With respect to the motion for contempt based on these actions, the court found that Vorpe was attempting to protect her children – not just explain the missed practices – when she gave the coach (a school official) the false impression that the CPO was still in effect. However, the court noted that the domestic relations order for counseling and for no contact with the children at extracurricular events was still in effect at the time of Vorpe's action. The trial court found that no specific court order had been violated when Vorpe altered the document and that, "while [Vorpe] should not have altered the documents, this does not rise to the level of contempt."

{¶ 19} Although Vorpe did alter the CPO document that her son submitted to his coaches, her testimony indicated that she did so in an attempt to make clear that her son was under a continuing obligation to attend counseling, not to misrepresent the court's orders. The trial court correctly observed that she had not misrepresented the parties' obligations pursuant to the court's orders at that time (as reflected in Agreed Order in the domestic relations case). Although, for a time, the school apparently stopped communicating with Austin about the children's activities – an action that was unwarranted by the CPO or the Agreed Order -- there is no indication that the school's actions were related to the expiration date that was omitted; both the CPO and the Agreed Order stated that Austin was allowed to attend extracurricular and school activities, with

no contact with the children, and they did not prohibit the school from sharing information about such activities with him.

{¶ 20}  The court's observation that Vorpe's modification of the CPO did not violate a specific order of the court was not determinative, because such an action could, in some circumstances, constitute indirect contempt, where it demonstrated a lack of respect for the court or its lawful orders.  *See, e.g., McCall v. Kranz,* 10th Dist. Franklin No. 15AP-436, 2016-Ohio-214, ¶ 7.   But, under the facts presented in this case, the trial court did not abuse its discretion in concluding that Vorpe should not be held in contempt.

{¶ 21}  The third assignment of error is overruled.

### IV. Conclusion

{¶ 22} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.


Copies mailed to:

Mark D. Webb
Michael J. Davis
Hon. Timothy D. Wood